United States District Court
Southern District of Texas
**ENTERED**
November 20, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JULIO E. LOZA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:24-CV-401 |
| § | |
| DEUTSCHE BANK NATIONAL TRUST § | |
| COMPANY, *et al.*, § | |
| § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION

Pending before the Court is "Defendant's First Amended Motion for Sanctions Against Plaintiff." (Docket No. 15.) The motion was referred to the undersigned after Plaintiff failed to appear at a hearing before U.S. District Judge Drew B. Tipton, which was scheduled on October 15, 2025. In its motion for sanctions, Defendant Deutsche Bank seeks "an Order of this Court granting monetary sanctions against Plaintiff . . . to halt Plaintiff's continued abuses of the court." (*Id.* at 3.) Plaintiff has responded to the motion for sanctions. (Docket No. 22; *see also* Docket Nos. 23, 27.)

As explained below, after review of the motion, applicable law, and other relevant pleadings, the undersigned recommends that Defendant's motion for sanctions be granted. For the reasons that follow, it is further recommended that Plaintiff be ordered to restrain from filing any future lawsuits related to the subject matter of this lawsuit, unless granted leave in advance by the Court.

## I.  BACKGROUND

On June 18, 2025, Defendant filed the pending motion for sanctions. (Docket No. 15.) As noted, the motion was referred to the undersigned for consideration after Plaintiff failed to

appear at motion hearing, which was set to address the motion for sanctions. (*See* Docket Nos. 24.) In its motion for sanctions, Defendant explains that:

> Plaintiff is past due for the July 1, 2010 payment and all subsequent payments, but he has managed to remain in the collateral without making payments for almost 15 years through a series of bankruptcy filings and ex parte temporary restraining orders obtained in state court prior to removal, obtained just prior to foreclosure sales properly noticed by Defendant.

(*Id.* at 1.) Specifically, Plaintiff has filed five (5) prior cases in the McAllen Division of the Southern District of Texas, all related to his attempts to prevent the foreclosure of the property in question. Those lawsuits include the following:

- 7:15-CV-286;
- 7:17-CV-430;
- 7:22-CV-10;
- 7:22-CV-65; and
- 7:24-CV-228.

Plaintiff filed the current lawsuit (7:24-CV-401) while the fifth lawsuit (7:24-CV-228) was still pending.[1] According to Defendant, the "claims [in the previous lawsuit] were virtually identical to the claims in the present action." (Docket No. 15, at 2.) Defendant argues that "[t]he claims asserted by Plaintiff in the present action and the prior action in this Court were frivolous and filed for an improper purpose, namely delaying properly noticed foreclosure sales on a loan that is over 15 years past due." (Docket No. 23, at 4.) Specifically, Defendant describes Plaintiff's litigation strategy as follows:

> Each time a new foreclosure sale is noticed by Defendant, Plaintiff files a new state court lawsuit, in many cases while another federal lawsuit is pending. These

---

[1] In fact, Plaintiff recently filed another case (7:25-CV-161) related to the property in question. (*See* Docket No. 15, at 3.)

> ex parte restraining orders granted by local state court judges have halted various properly noticed foreclosure sale. The local judges clearly had no knowledge of the various prior dismissals of Plaintiff's claims or of the related pending litigation when they granted the ex parte temporary relief to Plaintiff, while other duplicative litigation was pending.
>
> Once he obtains injunctive relief, Plaintiff then tries to draw out the litigation for as long as possible by continuously applying for a loan modification or short sale. Eventually once summary judgment is granted, Plaintiff starts the process over by filing a new case in state court and obtaining a new restraining order without notice to Defendant or its counsel.

(*Id.* at 2.)

"In this action, Plaintiff once again alleges that Defendant failed to provide him with notice of default and separately that Plaintiff is an active member of the United States Military and entitled to the protections of 51.002(1)."[2] (Docket No. 15, at 3.) However, the past few related lawsuits by Plaintiff were dismissed, at the summary judgment phase, and Defendant argues that they were found to be precluded by res judicata.[3] (Docket No. 23, at 3.) Notwithstanding that, Plaintiff argues "that his continuous filing of new duplicative lawsuits is justified by the fact that Defendant allegedly failed to allow him a loan modification or short sale of the Property."[4] (Docket No. 23, at 2; *see also* Docket No. 22, at 11-12.)

---

[2] Plaintiff claims that because he "has a household member (his son) who is an Active Duty Member of the Armed Forces of the United States, [he] has certain rights and benefits." (Docket No. 22, at 9.)

[3] (*See Loza v. Deutsche Bank*, 7:24-CV-228, Docket No. 19; *Loza v. Deutsche Bank*, 7:24-CV-65, Docket No. 10; *Loza v. Deutsche Bank*, 7:24-CV-10, Docket No. 21.)

[4] Plaintiff also explains that his repeated lawsuits are justified due to an alleged kidnapping, torture, and ongoing cancer treatments. (*See* Docket No. 22, at 6.) Defendant argues that these claims "are unsupported by evidence, but regardless, such allegations do not excuse the continuous bad faith filings and tactics undertaken by Plaintiff to delay foreclosure without any legal basis to do so, nor do they excuse his failure to inform the courts . . . of his continuous attempts at ex parte temporary restraining orders in new cases, while he has litigation already pending." (Docket No. 23, at 3.) For the reasons explained above, Defendant is correct.

As such, the undersigned set a show cause hearing to address Plaintiff's failure to appear, as well as the pending motion for sanctions. (Docket No. 26.) On October 29, 2025, Plaintiff attended the hearing, appearing remotely. (*See* Docket Nos. 28, 29, 31.) At the hearing, the parties were given an opportunity to argue the pending motion for sanctions, and their arguments were consistent with their filings, respectively.

In its motion, Defendant argues that "[a]bsent sanctions, Plaintiff will undoubtedly continue his bad faith litigation tactics." (Docket No. 23, at 3.) Specifically, "Defendant respectfully requests that Plaintiff be sanctioned in the amount spent by Defendant in defending the present action and the prior action, which amounts are established . . . and are no less than $32,022.00." (Docket No. 15, at 6; *see also* Docket No. 27.)

## II. ANALYSIS

Federal Rule of Civil Procedure 11 "was originally enacted in 1938 to curb tendencies toward untruthfulness in pressing a client's suit."[5] *Childs v. State Farm Mut. Auto. Ins. Co.*, 29

---

[5] As relevant here, Rule 11 of the Federal Rules of Civil Procedure provides in part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

. . . *continued on next page.*

F.3d 1018, 1023 (5th Cir. 1994) (citing Georgene M. Vairo, *Rule 11: A Critical Analysis,* 118 F.R.D. 189, 190 (1988)). The Fifth Circuit in *Childs* went on to explain:

> This Court has interpreted this rule to impose three affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document. These duties are:
>
> 1) that the attorney has conducted a reasonable inquiry into the facts which support the document;
>
> 2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and
>
> 3) that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation.
>
> *Thomas,* 836 F.2d at 874. Compliance with these affirmative duties is measured as of the time that the document is signed. Moreover, consistent with the purpose of the 1983 amendments, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances. *Id.* at 873; *United States v. Alexander,* 981 F.2d 250, 252 (5th Cir. 1993). An attorney's good faith is no longer enough to protect him from Rule 11 sanctions. *Robinson v. National Cash Register, Co.,* 808 F.2d 1119, 1127 (5th Cir. 1987).

*Childs*, 29 F.3d at 1023-24. As it pertains to the first factor, whether a party has made a reasonable inquiry into the facts, the Fifth Circuit has provided some guidance. The relevant factors to consider include the following: "1) the time available to the signer for investigation; 2) the extent of the attorney's reliance upon his client for the factual support for the document; 3) the feasibility of pre-filing investigation; 4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; 5) the complexity of the factual and legal issues; and 6) the extent to which development of the factual circumstances underlying the claim

---

Fed. R. Civ. P. 11(b).

requires discovery." *Childs*, 29 F.3d at 1026 (citing *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 875 (5th Cir. 1988)); *see also St. Amant v. Bernard*, 859 F.2d 379, 383 (5th Cir. 1988).

Here, the undersigned finds that the factors weight in favor of sanctioning Plaintiff for violating Rule 11. Put simply, Plaintiff's litigation strategy is one of intentional, and willful, delay. This is evidenced by the duplicative lawsuits which Plaintiff has filed regurgitating the same claims, regarding the same property in question.

"Under *Thomas,* once a district court finds a Rule 11 violation, it must impose some sanction."[6] *Childs*, 29 F.3d at 1027 (citing *Thomas,* 836 F.2d at 876); *see also Willy v. Coastal Corp.,* 855 F.2d 1160, 1172 (5th Cir. 1988). However, the court retains broad discretion in determining what sanction may be appropriate. *Thomas,* 836 F.2d at 876–77; *Estiverne v. Sak's Fifth Avenue,* 9 F.3d 1171, 1174 (5th Cir. 1993). In any event, the ultimate sanction should be the "least severe that adequately furthers the purpose of Rule 11." *Childs*, 29 F.3d at 1027 (citing *Akin v. Q–L Investments, Inc.,* 959 F.2d 521 (5th Cir. 1992)).

Furthermore, "[t]he rule specifically provides that reasonable and appropriate expenses, including attorney's fees, may be awarded as a sanction to the extent the expenses were reasonably caused by a violation of the rule." *Childs*, 29 F.3d at 1027 (citing FED. R. CIV. P. 11 (West 1992)); *see also Merriman, Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1194–95 (5th Cir. 1996). "Actual expenses and attorney's fees are not necessarily reasonable, though, because '[a] party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims.'"

---

[6] As relevant here, Rule 11 of the Federal Rules of Civil Procedure provides the following guidance on sanctioning a party: "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c).

*Childs*, 29 F.3d at 1027 (quoting *Thomas,* 836 F.2d at 879). "Moreover, the appropriate sanction in a given case may be an award to the adversary of some amount less than all of its reasonable expenses incurred as a result of the violation." *Childs*, 29 F.3d at 1027 (citing *Smith International, Inc. v. Texas Commerce Bank,* 844 F.2d 1193, 1197 (5th Cir. 1988)).

Here, as noted, "Defendant respectfully requests that Plaintiff be sanctioned in the amount spent by Defendant in defending the present action and the prior action, which amounts are established . . . and are no less than $32,022.00." (Docket No. 15, at 6; *see also* Docket No. 27.) While the undersigned does not necessarily find that the stated fees are "unreasonable" in total amount, the duplicative and repetitive nature of Plaintiff's lawsuits cuts both ways. Stated another way, each subsequent lawsuit filed by Plaintiff, should command fewer resources in defense as did the previous one. Having said that, the undersigned finds that "an award to the adversary of some amount less than all of its reasonable expenses incurred as a result of the violation" is appropriate under the circumstances of this case. *Childs*, 29 F.3d at 1027 (citing *Smith International, Inc.,* 844 F.2d at 1197). Accordingly, the undersigned recommends that Plaintiff be sanctioned for violating Rule 11 in an amount not to exceed $20,000.00.

Finally, in its motion Defendant also "respectfully requests that as sanctions, Plaintiff be required to seek and obtain the written permission of this Court prior to filing any additional lawsuits relating to the subject mortgage or Property." (Docket No. 23, at 4.) "Federal courts have the power to enjoin plaintiffs who abuse the court system and harass their opponents." *Clark v. Mortenson*, 93 F. App'x 643, 654 (5th Cir. 2004). "This includes enjoining future filings to protect its jurisdiction and control its docket." *Clark*, 93 F. App'x at 654 (citing *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 360 (5th Cir. 1986)). "However, an 'injunction against future filings must be tailored to protect the courts and innocent parties, while

preserving the legitimate rights of litigants.'" *Clark*, 93 F. App'x at 654 (quoting *Farguson,* 808 F.2d at 360).

Here again, given the duplicative nature of Plaintiff's lawsuits, the undersigned finds Defendant's request reasonable under the circumstances. Perhaps more importantly, Defendant's request is narrowly "tailored" to the subject matter and circumstances of this litigation.

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that "Defendant's First Amended Motion for Sanctions Against Plaintiff" (Docket No. 15) be **GRANTED**. It is further recommended that Plaintiff be enjoined from future filings related to the subject matter of this lawsuit, unless first granted leave by the Court.

### NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to the parties, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b). Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

SO ORDERED, the 20th of November, 2025 at McAllen, Texas.

_____
NADIA S. MEDRANO
United States Magistrate Judge